OPINION
On May 13, 1999, Sheri Lenk filed a complaint in the Franklin County Court of Common Pleas against Nationwide Mutual Insurance Co. ("Nationwide") and Omar Alomari. Ms. Lenk averred that she had a homeowners insurance policy with Nationwide and that Nationwide had a duty under such policy to defend her in an action that had been filed against her by Mr. Alomari. After Mr. Alomari filed the complaint against Ms. Lenk, Ms. Lenk demanded Nationwide provide her a defense pursuant to the policy and to pay any judgment against her. Nationwide denied that it had a duty to defend and/or indemnify Ms. Lenk under the policy. In her complaint, Ms. Lenk sought a declaration that Nationwide was obligated to provide her with a defense in the Alomari suit and to pay any judgment that may be had against her in such suit. Ms. Lenk also set forth claims against Nationwide of breach of contract, breach of fiduciary duty and bad faith. Ms. Lenk attached to her complaint a copy of her homeowners insurance policy and the complaint in the Alomari suit.
Nationwide filed an answer, counterclaim and cross-claim. Nationwide asserted it had no duty to defend or indemnify Ms. Lenk in the Alomari suit and sought a declaration of the same.[1] Nationwide and Ms. Lenk filed motions for summary judgment on the issue of Nationwide's duty to defend. Ms. Lenk subsequently filed a motion to supplement her motion for summary judgment and memorandum contra Nationwide's motion for summary judgment. Ms. Lenk requested that the trial court consider the recently-issued decision in the Alomari suit in its determination of whether there was a duty to defend.
On June 4, 2001, the trial court rendered a decision. The trial court denied Ms. Lenk's motion to supplement, stating that the duty to defend issue was not litigated in the Alomari suit, and Nationwide was not a party to such suit. Therefore, the trial court concluded that the decision in the Alomari suit had no bearing on the duty to defend the case before it. The trial court further found that the Alomari suit did not state a claim that was arguably or potentially within the coverage provided in Ms. Lenk's homeowners policy. Accordingly, the trial court granted Nationwide's motion for summary judgment and denied Ms. Lenk's motion for summary judgment. A judgment entry was journalized on June 28, 2001.
Ms. Lenk (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
 I. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE.
 II. THE TRIAL COURT ERRED BY DENYING THE CROSS-MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF-APPELLANT.
 III. THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO CONSIDER THE DECISION OF THE TRIAL COURT IN THE UNDERLYING ACTION INVOLVING APPELLANT AS A DEFENDANT AND BY NOT APPLYING THE DOCTRINE OF COLLATERAL ESTOPPEL.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING PLAINTIFF-APPELLANT'S MOTION TO SUPPLEMENT THE RECORD TO INCLUDE THE DECISION OF JUDGE BESSEY IN THE UNDERLYING CASE.
As they are interrelated, the assignments of error will be addressed together. Appellant contends the trial court erred in granting summary judgment in favor of Nationwide (hereinafter "appellee") and concluding that under the homeowners insurance policy, appellee had no duty to defend appellant in the Alomari suit. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
In essence, the facts in the case at bar are not in dispute. Rather, we are presented with a question of law: does the homeowners insurance policy provide coverage for (i.e., give rise to a duty to defend) the claims asserted against appellant in the lawsuit filed by Mr. Alomari? For the reasons that follow, we determine that under the insurance policy, appellee had no duty to defend appellant in the Alomari suit.
In Motorists Mutual v. Trainor (1973), 33 Ohio St.2d 41, paragraph two of the syllabus, the Supreme Court of Ohio held:
 The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured. (Socony-Vacuum Oil Co. v. Continental Cas. Co. [1945], 144 Ohio St. 382, approved and followed.)
In Willoughby Hills v. Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177,179, the Supreme Court, in defining the term "scope of allegations" as used in Trainor, addressed the issue of whether the determination of a duty to defend was limited solely to an examination of the pleadings in the underlying case. The Supreme Court stated that the pleadings alone may not provide sufficient factual information to make such determination. Id. at 180. The duty to defend need not arise solely from the allegations in the complaint and may arise at a point subsequent to the filing of the complaint. Id. at 179. Thus, the scope of the allegations may encompass matters outside the four corners of the pleadings. Id. at 180. The Supreme Court held:
 Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.
Id. at syllabus.
In determining the duty to defend, the entire insurance policy must be examined. See Zanco, Inc. v. Michigan Mut. Ins. Co. (1984),11 Ohio St.3d 114. The policy at issue in the case at bar states, in pertinent part:
DEFINITIONS
 1. "Bodily Injury" means bodily harm, sickness or disease, including resulting care, loss of services and death.
* * *
9. "Occurrence" means bodily injury * * * resulting from:
a. one accident; or
 b. continuous or repeated exposure to the same general condition.
* * *
 SECTION II LIABILITY COVERAGES COVERAGE E PERSONAL LIABILITY We will pay damages the insured is legally obligated to pay due to an occurrence.
 We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.
* * *
 SECTION II EXCLUSIONS 1. Coverage E — Personal Liability * * * do[es] not apply to bodily injury * * *:
a. which is expected or intended by the insured. * * *
The policy is clear and covers damages appellant would be legally obligated to pay due to bodily harm, sickness or disease resulting from an accident or continuous/repeated exposure to the same general condition. Further, the policy specifically does not apply to bodily harm, sickness or disease that is expected or intended by the insured.
In essence, appellee asserts it had no duty to defend appellant in the Alomari suit because in such suit, no bodily injury was alleged such that would bring the suit within coverage under the policy. Appellant asserts that the Alomari complaint does allege bodily injury, specifically, that Mr. Alomari suffered "physical injury" in the form of "adverse health effects." An examination of the Alomari complaint is now necessary. The Alomari complaint states, in pertinent part:
FACTS
 3. Plaintiff [Alomari] was employed by Columbus State Community College (College) from 1990 through 1996.
 4. At all times relevant to this Complaint, Defendant [Lenk] was a student of the College.
 5. Plaintiff and Defendant became involved in an intimate relationship in or about June 1996.
 6. On or about September 9, 1996, Defendant ended the intimate relationship with Plaintiff.
 7. Subsequently, Defendant tried to re-establish the intimate relationship with Plaintiff.
* * *
 9. As a result of Plaintiff's refusal, Defendant threatened, harassed and intentionally injured Plaintiff and his reputation.
 10. Additionally, * * * Defendant, in the presence and hearing of third persons, spoke words falsely accusing Plaintiff of sexual harassment, violation of the College's policies and other improper conduct.
 11. Further, as a result of said slander, Plaintiff's employment was prematurely terminated by the College.
* * *
 13. Since the date of said slander, Plaintiff has been unable to obtain adequate employment elsewhere and has been otherwise injured.
 FIRST CAUSE OF ACTION INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
* * *
 15. Defendant owed Plaintiff a duty to refrain from intentionally injuring him.
16. Defendant breached her duties to Plaintiff.
 17. Defendant's intentional actions as set forth above proximately caused injury to Plaintiff in the form of embarrassment, mental anguish, loss of reputation, loss of self-esteem, harm to Plaintiff's relationship with his family, and other emotional distress and caused physical injury in the form of adverse health effects.
 18. Defendant's actions proximately caused Plaintiff's damages arising from their intentional infliction of emotional distress.
 19. Defendant's actions constituted an outrageous invasion of Plaintiff's personal rights.
 20. Defendant acted willfully and maliciously, with spite and ill will, and with a reckless disregard for Plaintiff's legal rights.
* * *
 SECOND CAUSE OF ACTION DEFAMATION
* * *
 23. Said words spoken by Defendant concerning Plaintiff, described above, were false and defamatory, have brought Plaintiff into ridicule and have injuriously affected him and his reputation.
 24. Said words were spoken with malice and were intended to injure Plaintiff.
 25. As a result of said slander, Plaintiff has suffered great mental anguish and has suffered injury in his personal and business reputation.
 26. As a proximate result of Defendant's defamatory remarks, Plaintiff has suffered and incurred, and is suffering and incurring, serious harm and damage to Plaintiff's personal and professional reputation and credibility * * *.
 THIRD CAUSE OF ACTION TORTUOUS (sic) INTERFERENCE WITH A CONTRACT
* * *
 29. Defendant unlawfully interfered with the contract between Plaintiff and the College.
 30. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages and is entitled to judgment.
 FOURTH CAUSE OF ACTION NEGLIGENCE
32. Defendant's actions constitute negligence.
 33. Defendant's negligence proximately caused Plaintiff to suffer damages.
 34. As a further result of Defendant's negligence, Plaintiff was unable to engage in his usual occupation for a substantial period of time, thereby sustaining a loss of income * * *.
 35. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages and is entitled to judgment.
Appellant asserts that the complaint sought damages for personal injury as a result of appellant's alleged negligence. Appellant points out that Mr. Alomari claimed to have suffered physical injury in the form of adverse health effects and that physical injury is the same as bodily harm. Appellee acknowledges that the complaint alleges physical injury, but appellee asserts that such allegation is only in the context of intentional acts and that physical injury is not alleged in the context of any negligent conduct. Further, appellee asserts that there is no evidence that Mr. Alomari was physically injured.
The only other evidence offered were the depositions of Mr. Alomari. Mr. Alomari's depositions leave no doubt that his claims against appellant involved only alleged intentional acts which caused anxiety, loss of sleep and distress. Indeed, Mr. Alomari stated specifically, in regard to the allegations in his complaint, that he was not physically injured. (Feb. 19, 2000 deposition at 68, 73.) The policy at issue covers "bodily injury" only, such being defined as bodily harm, sickness or disease.
This court has determined, in the context of whether a duty to defend exists under similar policy language, that the term "bodily injury" in an insurance contract does not apply to mental stress or emotional discomfort. See Mains v. State Auto. Mut. Ins. Co. (1997),120 Ohio App.3d 534, 540-542, discretionary appeal not allowed in (1997), 80 Ohio St.3d 1436. See, also, Dickens v. Gen. Acc. Ins. (1997), 119 Ohio App.3d 551, 553-554, discretionary appeal not allowed in (1997), 79 Ohio St.3d 1509. The evidence in the case at bar reveals that Mr. Alomari alleged only that appellant's conduct caused him mental or emotional distress. Thus, Mr. Alomari's claims did not involve "bodily injury" as contemplated under the policy.
We also note that appellant contends the trial court should have considered the decision in the Alomari suit. However, even if such decision was considered, the result in the case at bar does not change. The decision did not, as appellant asserts, conclude that Mr. Alomari suffered or alleged that he had suffered "bodily injury" as such term is used in the insurance policy. Rather, the trial court merely concluded, in the context of which statute of limitations applied to Mr. Alomari's negligence claim, that Mr. Alomari had claimed personal bodily injury and adverse health effects. Thus, the trial court applied the two-year statute of limitations found in R.C. 2305.10 to Mr. Alomari's negligence claim. The insurance policy and the duty of appellee to defend thereunder were not at issue in the underlying suit. For this reason, collateral estoppel does not apply. Further, as indicated above, any error in the trial court's failure to admit and/or consider the underlying decision was harmless.
For the reasons stated above, summary judgment in favor of appellee was appropriate as appellee had no duty to defend appellant in the Alomari lawsuit. Accordingly, all of appellant's assignments of error are overruled.
Having overruled each of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and BROWN, JJ., concur.
[1] The claims against Mr. Alomari were eventually voluntarily dismissed.